UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JANE DOE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JONATHAN REES, a/k/a GREG ELLIS,<br>a/k/a JONNY REES,<br><br>　　　　　Defendant. | **COMPLAINT**<br><br>Case No.: 3:25-cv-133 |

　　　　Plaintiff, Jane Doe ("Plaintiff"), by and through her attorneys, SouthBank Legal, Kenneth Caruso Law, LLC, and Labkowski Law, P.A., as and for her Complaint against Jonathan Rees, a/k/a Greg Ellis, a/k/a Jonny Rees ("Defendant"), alleges as follows:

## JURISDICTION AND VENUE

　　　　1.　　Plaintiff is a citizen of the State of Texas.

　　　　2.　　Defendant is a citizen of the United Kingdom of Great Britain and/or of the State of Arizona.

　　　　3.　　This Court has subject matter jurisdiction, pursuant to 28 U.S.C. § 1332(a)(1) and/or (2), in that (a) the action is between citizens of different states, and/or between a citizen of a state and a citizen of a foreign state, and (b) the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

　　　　4.　　Venue lies in this district, pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to the claim occurred in, and a substantial part of property that is the subject of this action is situated in, this district.

**ALLEGATIONS OF FACT**

5.　Plaintiff is a professional photographer, who relies on her reputation in connection with her business.  The United States District Court for the Northern District of New York has previously entered an order, pursuant to 15 U.S.C. § 6851(b)(3)(B), allowing her to proceed as "Jane Doe" in an action against Defendant, alleged more particularly below.

6.　Defendant is an actor and author, who has appeared in dozens of movies, television shows, and podcasts, and has tens of thousands of followers on social media.

7.　Defendant is currently under indictment, in a New York state court, for fabricating evidence in a case that he brought against Plaintiff.

8.　Defendant, furthermore, has a history of domestic violence, which has led to court orders, including two that currently protect Plaintiff, and one that protected his ex-wife, as described more particularly below.

9.　Plaintiff and Defendant had an on-again, off-again, intimate relationship from April 2016 until September 2022, when Plaintiff informed Defendant that she was ending the relationship, blocked him from continuing to call or text her, and stopped responding to his attempts to contact her.

10.　Defendant thereupon began a campaign of threats, harassment, exposure and defamation against Plaintiff.

11.　Defendant's campaign began with threats that he would harm himself if Plaintiff did not respond to Defendant. That tactic by Defendant had worked in the past, because Plaintiff knew that Defendant had previously been institutionalized for a suicide attempt.

12.　On or about September 5, 2022, Defendant sent a desperate plea to Plaintiff asking Plaintiff to communicate with him after Plaintiff attempted to end the relationship.

Defendant insinuated that he had something crucial to share with her.  Plaintiff agreed to speak with Defendant.

13. On September 6, 2022, Plaintiff spoke with Defendant via a video call.  During the call, Defendant berated Plaintiff and called her names, such as "whore," "prostitute," and "slut."

14. Plaintiff then told Defendant that this would be the last time he would ever see her or hear from her.  Plaintiff then blocked Defendant on social media and various texting platforms.  Plaintiff has not spoken to Defendant since.

15. Thereafter, on the same day, Defendant emailed Plaintiff the following threat: "I hope that you will 'unblock' me so that if anything disastrous should happen in the future that you and I will be reachable."  Plaintiff did not respond.

16. On September 9, 2022, Defendant sent an email to Plaintiff in which Defendant threatened that he would kill himself unless Plaintiff contacted him.  Despite her serious concern, and because she was afraid of Defendant, Plaintiff did not respond.

17. On September 15, 2022, Defendant sent Plaintiff an email, attaching a picture of a letter he claimed had been sent to his address.  He asked where Plaintiff wanted it sent.  This was an apparent effort to learn where Plaintiff was living.  Plaintiff, again, did not respond.

18. When that tactic failed, Defendant increased the pressure.  On September 16, 2022, Defendant wrote to Plaintiff via email, "My attempts to contact you to discuss your behavior have proved futile.  I am still perplexed as to why you chose to commit federal crimes, violate my privacy, and embark on a years long campaign to salvage [sic] my reputation.  In light of your unwillingness to talk it out, I will soon be sharing my experiences with you - MY truths – with your family, friends, and business associates."  Plaintiff understood this to show that

Defendant was acting upon his threat to ruin Plaintiff's reputation, relationships, and business. Plaintiff, again, did not respond.

19. When those tactics failed, Defendant increased the pressure still further. Thus, on October 9, 2022, Defendant sent Plaintiff an email that included a picture of Plaintiff, naked and showing her bare breasts, nipples and pubic area, and engaging in masturbation (the "Intimate Visual Depiction"). Defendant had taken the Intimate Visual Depiction without Plaintiff's knowledge or consent, when Plaintiff had a reasonable expectation of privacy, in her own home, during a private, intimate interaction between Plaintiff and Defendant on a Facetime call. Plaintiff had specifically told Defendant not to record, save, or share any of their intimate communications.

20. In the October 9 email, Defendant threatened to publish the Intimate Visual Depiction and other pictures and videos to a wide audience if Plaintiff did not contact him. Defendant wrote: "I will post documents, photos, audio, video, on a special website dedicated all about you, and stop at nothing to best you at what you set out to do to me – to ruin my reputation … So keep going [Plaintiff First Name][Plaintiff Maiden Name] … keep avoiding and ignoring me … And you will see who has more to lose … I am just getting started … Unless you communicate with me it will get way worse …. It ends when you communicate." This worried Plaintiff, because Defendant had more than 65,000 social media followers at the time. Nonetheless, Plaintiff remained firm and did not respond.

21. Also on October 9, 2022, Defendant emailed Plaintiff's daughter. The subject line of the email was "Your Mother." The email falsely accused Plaintiff of, among other things, committing a litany of crimes and engaging in sexual infidelity. Defendant wrote, "I am determined that she [Plaintiff] will not do this to anyone else in the future." Defendant also

wrote that he had evidence of Plaintiff committing crimes, including "2-part[sic] wire tapping Defendant (a federal offense she admitted to), illegally impersonating me to gain access to my phone records (a CDR offense), multiple privacy protection act violations (state and federal), false police reports," that Plaintiff had "attacked [him] with a kitchen knife," and "created false legal declarations" about his violent behavior. Defendant wrote, "Your mother is a pathological liar with multiple personalities and an unstable temperament." Defendant threatened to reveal more details, writing that he was only providing Plaintiff's daughter with "the tip of the iceberg of what [he has] managed to discover about [Plaintiff's] deceptions." Plaintiff's daughter did not respond.

22. On October 11, 2022, at 5:39 p.m., Defendant sent an email to "JM", a business associate of Plaintiff, threatening to expose Plaintiff. In this email, Defendant referred to Plaintiff as a "first class lying cheating bitch" and wrote, "If she doesn't communicate with me … I'm going to share everything with everyone." JM did not respond to Defendant. Plaintiff did not contact Defendant.

23. A mere 40 minutes later, at 6:19 p.m., Defendant, as he had threatened, sent the Intimate Visual Depiction to JM in an email. In the email to JM, Defendant wrote,

> I have my team planning a podcast special and an [sic] website on [Plaintiff first name] [Plaintiff maiden name] – about her, her narcissism, and her escapades. Her diagnosed borderline personality disorder. It'll be embarrassing and humiliating for [Plaintiff's first name.]
>
> All she had/has to do is have one final conversation to resolve all this and she won't do that – and so I will remedy her reputation savaging and lies privately and publicly.
>
> If what she told you is true, how do I have photos and videos from March through August of her performing masturbation for me? (See screenshot!) …

5

I will not stop until she allows us closure.

24. Also on October 11, 2022, Defendant sent an email to Plaintiff stating that Plaintiff is a "lying, cheating piece of absolute shit of a human being."

25. On October 12, 2022, Defendant sent WhatsApp messages to Plaintiff's daughter reiterating the false and defamatory information he had sent to her via email on October 9, 2022. Plaintiff's daughter did not respond. Defendant then messaged Plaintiff's daughter via an Instagram direct message, with similar false and defamatory accusations against her mother. Plaintiff's daughter demanded Defendant stop contacting her.

26. Also on October 12, 2022, Defendant sent Plaintiff an email repeating his demand to get "Final Closure." Plaintiff did not respond.

27. Defendant's behavior was particularly frightening because Defendant is a Hollywood actor who has a large social media following, including more than 65,000 followers on X, previously known as Twitter, and 17,000 followers on Instagram, which enabled him to destroy Plaintiff's reputation and career. Defendant also has a history of profiting from his own acts of domestic violence. In 2021, Defendant published a book, *The Respondent: Exposing the Cartel of Family Law*, in which he criticized the family court that oversaw his ex-wife's domestic violence case against him.[1] In 2022, Defendant published a book, *The Art of Family Law War: A Strategic Playbook and Survival Guide*, where he "reveals the secret strategies and legal super weapons deployed by family law firms and ex[-]spouses, as well as game-theory, tips, statistics, information and valuable resources for anyone seeking relief from the dystopian maze of family law war."[2]

---

[1] https://www.amazon.com/Respondent-Exposing-Cartel-Family-Law/dp/1646634810 (last accessed February 2, 2025).
[2] https://www.amazon.com/Art-Family-Law-War-Strategic-ebook/dp/B09SDYDVZW (last accessed February 2, 2025).

28. Defendant also had a concerning history of profiting from his own acts of domestic violence. Indeed, in 2015, a restraining order was issued against Defendant to protect his former wife, who is the mother of his children. Defendant was featured on an episode of Dr. Drew's widely circulated podcast to discuss the book.

29. On October 14, 2022, Plaintiff petitioned the Superior Court of the State of California, County of Los Angeles (the "California Court"), for a domestic violence restraining order. The California Court then granted a temporary restraining order, in favor of Plaintiff, and against Defendant. The temporary restraining order also protected Plaintiff's adult daughter, son-in-law, and grandson.

30. On October 31, 2022, in retaliation against the California Court temporary restraining order, Defendant filed a petition against Plaintiff for a domestic violence order of protection (the "Retaliatory Petition") in Family Court, Chenango County, New York (the "New York Court"), where Defendant resided at the time.

31. In the Retaliatory Petition, Defendant made false statements and submitted fabricated evidence. For example, Defendant asserted that Plaintiff had wiretapped him. Attached to Defendant's declaration, signed under penalty of perjury, and filed in the New York Court, was an email purportedly from Plaintiff, but which Defendant had materially altered so as to make it appear that Plaintiff had admitted to watching Defendant through his Ring camera. Defendant, however, had forged the email, as later proven through computer forensics.

32. On or about November 1, 2022, the New York Court, in reliance of Defendant's false statements and forged evidence, granted a temporary restraining order against Plaintiff. Defendant sent copies of the temporary restraining order to several of Plaintiff's friends and professional associates.

33. Also on or about November 1, 2022, Defendant contacted the IRS and filed a false complaint against one of Plaintiff's companies, which led to an audit of the company, for which Plaintiff incurred accountants' fees.

34. Also on or about November 1, 2022, upon information and belief, Defendant filed a report with the Transportation Security Administration ("TSA") falsely flagging Plaintiff as a potential danger who may be imminently boarding a plane and may have access to guns. The TSA, however, took no action against Plaintiff.

35. On November 4, 2022, Defendant caused Plaintiff to be served with the New York restraining order.

36. Also on November 4, 2022, Defendant sent an associate from New York to the home of Plaintiff's daughter in Texas, to demonstrate that he would not be restrained. The associate went to Plaintiff's daughter's house while she was home alone with her new baby. The associate specifically asked for Plaintiff's daughter by name, and handed her the New York restraining order, even though the daughter was not mentioned in those papers. The delivery, purporting to be service of process, was nothing more than another threat. These actions, furthermore, violated the California Court's restraining order, which specifically prohibited Defendant from taking "any action to look for any person protected by this order, including their addresses or locations."

37. Also on November 4, 2022, Defendant sent an email to "GR," who was Plaintiff's professional colleague. The email falsely stated that Plaintiff is a "very dangerous individual with 8 aliases … [and] She is facing multiple felonies in multiple states. **Please**, you be very careful." (emphasis in original.) Defendant specifically instructed GR to forward the email to another one of Plaintiff's professional associates with whom Plaintiff was then working on a

business project. Upon information and belief, Defendant knew that Plaintiff was engaged with this professional associate on a project at that time.

38. On or about November 5, 2022, Defendant filed a false report, alleging wrongdoing by Plaintiff, with the Norwich (New York) Police Department.

39. On or about November 6, 2022, Defendant drafted and circulated a false press release about Plaintiff, entitled, "Amber Heard's Copycat," which posted a photograph of Plaintiff's face next to a photograph of Amber Heard's face (the "Press Release"). The Press Release included lies such as, Plaintiff "Caught Wiretapping [Defendant]. Stalking And Recording [Defendant] at his LA Home For Six Months, Without His Knowledge & Attacking Him With a Knife: Ordered To Be Restrained by New York Judge." In the Press Release, Defendant fabricated a quoted response from Plaintiff, which stated, "*I logged into your RING account. I continued watching and recording it for six months. Where I really messed up was to sit and watch it and share it with others.*" Upon information and belief, Defendant sent the Press Release to his publicist, his producer, his manager, and approximately 20 news media organizations, including the Daily Mail, Fox, and NBC.

40. On or about November 7, 2022, Defendant filed a false report, alleging wrongdoing by Plaintiff, with the New York State Police.

41. On November 14, 2022, both Plaintiff and Defendant testified in the California Court at the trial of Plaintiff's petition for a domestic-violence restraining order. During his testimony, Defendant admitted that he sent the Intimate Visual Depiction to Plaintiff and to JM for the purpose of pressuring Plaintiff to speak with him. He testified, "It was for the sole purpose of us having a conversation[.]"

42. On November 14, 2022, after Defendant testified in open court, the California Court issued a Domestic Violence Restraining Order After Hearing (the "DV ROAH"), which protects Plaintiff from Defendant, and which expires on November 14, 2025.

43. The DV ROAH includes no-abuse, no-contact, and stay-away language. It also specifically states that "Respondent may not post or share any photo of Petitioner except upon receipt of a written release by Petitioner in advance."

44. Defendant nevertheless continued his actions to intentionally harm Plaintiff, causing Plaintiff to suffer continued harm and distress. For example:

   a. On November 25, 2022, just before he sought a new trial in the California Court, Defendant, through his associate, sought to intimidate "DB"—who had testified previously, providing crucial jurisdictional evidence against Defendant in the California action—from testifying against Defendant at any new trial.

   b. On November 26, 2022, Defendant posted on his social media page that he would reveal Plaintiff's name soon because she had come after him.

45. On February 3, 2023, the California Court heard and denied Defendant's motion for a new trial.

46. On or about February 24, 2023, Defendant's counsel in the New York proceeding commenced by the Retaliatory Petition was provided with forensic proof of the forged document submitted to the New York Court in support of Defendant's petition for a restraining order. Defendant did not deny the forgery, and instead, through counsel, dismissed the Retaliatory Petition.

47. Most recently, on or about December 20, 2024, a grand jury sitting in Chenango County, New York, indicted Defendant based on the conduct alleged above—that is, Defendant's submission of forged and fabricated evidence to the New York Court.

48. Specifically, the grand jury charged violations of the following statutes: N.Y. P.L. § 175.35(1) (offering a false statement for filing in the first degree); N.Y. P.L. § 210.05 (perjury in the third degree); N.Y. P.L. § 210.45 (making a punishable false written statement); N.Y. P.L. § 250.45(1) (unlawful surveillance in the second degree); N.Y. P.L. § 135.60(3) (coercion in the third degree); N.Y. P.L. § 135.60(5) (coercion in the third degree); N.Y. P.L. § 135.60(9) (coercion in the third degree); N.Y. P.L. § 240.30(1A) (aggravated harassment in the first degree); N.Y. P.L. § 245.15 (unlawful dissemination or publication of an intimate image).

49. Defendant is a dual British/American citizen. He has a British passport and can leave the United States—quickly and permanently.

50. Meanwhile, on or about October 31, 2023, Plaintiff commenced a civil action against Defendant in the United States District Court for the Northern District of New York, case number 23-cv-1352 (TJM/ML) (the "NDNY Action"). Plaintiff's complaint, as later amended and supplemented, alleged the following claims for relief arising out of Defendant's campaign of harassment, threats and false publications:

51. First Claim for Relief: Plaintiff alleges that Defendant violated federal law, 15 U.S.C. § 6851, by disclosing the intimate visual depiction of Plaintiff without consent.

52. Second Claim for Relief: Plaintiff alleges that Defendant violated New York Civil Rights Law § 52-b(1), by disseminating an intimate image of Plaintiff to harass, annoy, and alarm her (ASC ¶¶ 67-74).

53. <u>Third Claim for Relief</u>: Plaintiff alleges that Defendant threatened to disseminate her intimate image, to harass and alarm her (ASC ¶¶ 75-83), in further violation of New York Civil Rights Law § 52-b(1).

54. <u>Fourth Claim for Relief</u>: Plaintiff alleges intentional infliction of emotional distress arising from Defendant's extreme and outrageous conduct, which caused severe distress (ASC ¶¶ 84-88).

55. <u>Fifth Claim for Relief</u>: Plaintiff alleges defamation based on an email sent by Defendant, containing false and defamatory statements about her (ASC ¶¶ 89-98).

56. <u>Sixth Claim for Relief</u>: Plaintiff alleges defamation based on the Press Release, which contained false and defamatory statements linking Plaintiff to criminal conduct (ASC ¶¶ 99-112).

57. <u>Seventh Claim for Relief</u>: Plaintiff alleges malicious prosecution, claiming that Defendant initiated and prosecuted the baseless Retaliatory Petition against her in the New York Court to retaliate against her and to harm her (ASC ¶¶ 113-119).

58. <u>Eighth Claim for Relief</u>: Plaintiff alleges that Defendant engaged in fraudulent transfers under New York's Debtor and Creditor Law, transferring assets to hinder, delay or defraud Plaintiff in her capacity as a creditor (ASC ¶¶ 120-128).

59. At the outset of the NDNY Action, Defendant appeared through counsel, answered the complaint and participated in some discovery.

60. Thereafter, however, Defendant's counsel withdrew, and Defendant defaulted at every turn, violating at least 19 court orders.

61. Thus, on November 5, 2024, Plaintiff requested the entry of a clerk default as to her Amended and Supplemental Complaint, which the Clerk granted on November 7, 2024.

62. On November 22, 2024, Plaintiff filed a motion for a default judgment, on the merits under Rule 55, and for failure to comply with discovery orders under Rule 37, which remains pending as of the filing of this Complaint.

63. Plaintiff now brings this action, pleading one Claim for Relief, which seeks a judgment with respect to the fraudulent transfers, described above and more particularly below.

## CLAIM FOR RELIEF
(Fraudulent Transfers)

64. Plaintiff repeats and realleges paragraphs 1-63 above as if fully set forth here.

65. Beginning on or about December 9, 2021, Defendant owned, possessed and/or controlled land and improvements, including a house, located at 680 State Highway 220, McDonough, New York 13801 (the "New York Property").

66. On or about October 31, 2023, Plaintiff commenced the NDNY Action, as alleged above.

67. Thus, on or about October 31, 2023, a claim or claims arose in favor of Plaintiff against Defendant.

68. On October 31, 2023, or by no later than November 15, 2023, Defendant knew of the pendency of that action.

69. On November 21, 2023, Defendant entered into a contract to sell the New York Property—to his neighbor, in a transaction that involved no real estate broker/agent and no public marketing of the property.

70. The very next day, November 22, 2023, Defendant entered into a contract to purchase land and improvements, including a house, at 2309 Florimond Avenue, Michigan City, Indiana 46360 (the "Indiana Property").

13

71. On December 28, 2023, Defendant, directly or indirectly, transferred the New York Property for at least $999,999 (the "Proceeds").

72. Defendant then, directly or indirectly, transferred substantially all the Proceeds from the State of New York to the State of Indiana, where, directly or indirectly, he used the Proceeds to purchase the Indiana Property.

73. In an official Sales Disclosure Form, Defendant, in his own handwriting, signed his name in the box for "Signature of Buyer[.]"

74. That Form also stated the "Printed Legal Name of Buyer[]" as "Jonathan Rees a/k/a Greg Ellis, Special Trustee[.]"

75. That Form, finally, identifies "Buyer[]" in the name of "Southpac Trust International, Inc. as Trustee of the IFLY Trust[.]"

76. That trust, however, has the same address as the Indiana Property.

77. According to the Sales Disclosure Form, the "conveyance document" for the Indiana Property was "signed" on December 22, 2023.

78. The LaPorte County Recorder recorded a Warranty Deed on January 9, 2024.

79. Defendant also transferred his year-old Tesla automobile (the "Tesla Automobile"), previously registered under his own name in New York.

80. On January 22, 2024, Defendant organized "Morf, LLC" under the laws of the State of Wyoming, which does not require public disclosure of a LLC's members.

81. On the same day, Defendant made Morf, LLC the titular owner of the Tesla Automobile, which he registered in Indiana, at the same address as the Indiana Property.

82. Defendant made the foregoing transfers (the "Transfers") with actual intent to hinder, delay and defraud Plaintiff. In particular:

(a) before the Transfers were made, Defendant had been sued by Plaintiff in the NDNY Action;

(b) the Transfers transferred substantially all of Defendant's assets;

(c) Defendant concealed the Proceeds;

(d) Defendant removed the Proceeds from the State of New York;

(e) Defendant absconded from the State of New York;

(f) Defendant failed and refused to provide his current address for use in the NDNY Action;

(g) Defendant retained possession and control of the Proceeds after the Transfers;

(h) Defendant became insolvent shortly after the Transfers were made; and/or

(i) On or about January 23, 2024, Defendant's counsel stated to Plaintiff's counsel that Defendant is "judgment-proof."

83. The Transfers are fraudulent as against Plaintiff.

84. As a result of the foregoing, Plaintiff suffered injuries and seeks relief as prayed below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment, in her favor and against Defendant, and grant her relief awarding:

A. A money judgment in the amount of the Transfers and/or the Proceeds, reasonable attorney's fees, avoidance of the Transfers, and an injunction or other order prohibiting Defendant from making further transfers and directing Defendant to restore the Proceeds for recovery by Plaintiff;

B. Punitive damages, and the costs and disbursements of this action, including

attorney's fees, as allowed by law;

      C.      Pre-filing, pre-judgment, and post-judgement interest at the highest lawful rate;

and

      D.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable.

February 10, 2025

Respectfully submitted

/s/ John A. Conway
John A. Conway (27712-71)
Brianna Wittig (39072-71)
SOUTHBANK LEGAL
100 E. Wayne Street, Suite 300
South Bend, IN 46601
(574) 968-0760
jconway@southbank.legal
bwittig@southbank.legal

/s/ Kenneth A. Caruso*
Kenneth A. Caruso
KENNETH CARUSO LAW LLC
15 W. 72nd Street
New York, NY 10023
(646) 599-4970
ken.caruso@kennethcarusolaw.com

and

/s/ David Labkowski*
David Labkowski
LABKOWSKI LAW, P.A.
1200 Brickell Avenue, Suite 800
Miami, FL 33131
(786) 461-1340
david@labkowskilaw.com

*Attorneys for Plaintiff Jane Doe*

*Pro Hac Vice Admission Pending*

16